32 C.C.P.A.(Patents)

## Application of OLSEN.

### Patent Appeal No. 4922.

Court of Customs and Patent Appeals.

Dec. 11, 1944.

Chritton, Wiles, Davies, Hirschl & Dawson, of Chicago, Ill. (Charles J. Merriam, of Chicago, Ill., Nelson J. Jewett, of Washington, D. C., and Bernard A. Schroeder, of Chicago, Ill., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

Appellant brings before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting twelve claims (numbered 4 to 6, inclusive, 12 to 15, inclusive, and 17 to 21, inclusive) of his application (serial No. 306,409), for patent relating to a soap composition for use in dry-cleaning operations.

Two claims (numbered, respectively, 8 and 11) stand allowed.

All the claims on appeal were rejected as presenting nothing patentable over prior art cited, claim 21 being rejected on the additional ground that it is "too broad in the recitation of 'an inert finely divided inorganic absorbent.'"

In the brief for appellant before us claims 4 and 20 are quoted as illustrative of the rejected claims. They read:

"4. A dry cleaning soap composition comprising a sodium soap of a soap-forming fatty acid, a solubilizing portion of an inert hydrocarbon dispersing oil therein, the amount of the oil being sufficient to render the soap normally plastic, and diatomaceous earth, the ratio of diatomaceous earth to the plasticizing portion of the oil being from 1:2 to 2:1."

"20. A dry cleaning soap composition comprising diatomaceous earth, a fatty acid-caustic alkali soap, and an inert dispersing oil in sufficient proportion to render the soap soluble in dry cleaning solvents, the soap constituting from 6% to 10% of the composition, the amount of oil being in excess of the amount of soap, and the diatomaceous earth being from one-half to twice the combined amount of oil and soap."

The examiner defined the several claims as follows: "Claims 4, 5, 6, 12, 13, and 14 are drawn to a sodium fatty acid soap. Claims 15 and 17 are drawn to a water soluble detergent fatty acid soap. Claims 18–21 are drawn to a fatty acid caustic soap. Claims 4 and 5 are specific to a hydrocarbon oil as the dispersing medium. Claim 19 recites a light mineral oil. Claims 6, 12–15, 17, 18, 20, and 21 recite an inert dispersing oil. Claims 4–6, 12–15, and 17–20 are specific to diatomaceous earth. Claim 21 recites an inert finely divided inorganic absorbent."

The references cited by the examiner (each of which was also specifically referred to in the decision of the Board) are: Hawliczek (Br.), 23,463, 1904; Ormandy (Br.), 26,264, 1909; Donlan, 2,084,483, June 22, 1937; Hampton, 2,143,066, January 10, 1939; Washing, Cleaning, and Polishing Materials—Bureau of Standards Circular, No. 383, (1930) pp. 9, 26, and 27.

The Donlan and Hampton patents and the Bureau of Standards circular evidently were cited "to show," as expressed in the brief of the Solicitor for the Patent Office, "more or less conventional dry cleaning soap compositions comprising sodium soaps of fatty acids dispersed in inert hydrocarbon oils." Appellant in his application concedes that such soaps are old. They are in a plastic or paste condition and do not have diatomaceous earth as an in-

gredient of their composition. Appellant uses diatomaceous earth as an ingredient whereby due, it is said, to the absorptive qualities of the earth, the final product is in powdered form.

The British patents disclose compositions in which diatomaceous earth is an ingredient. These (seemingly because of the absence of certain other ingredients) are not suitable for dry-cleaning operations but are otherwise used as cleansing soap. The examiner stated:

"The patent to Hawliczek shows a cleaning composition in powdered form which is obtained by mixing diatomaceous earth (kieselguhr) with a soap of jelly-like consistency. The diatomaceous earth solidifies the mass and the composition assumes a granular or pulverulent form.

"Ormandy shows that diatomaceous earth has the faculty of retaining moisture and if mixed with soap which is too soft it will harden to soap, absorbing a considerable amount of water. Ormandy also shows that diatomaceous earth enhances the properties of soap for cleaning purposes."

In view of the prior art disclosures, the question to be determined is whether it constituted invention on the part of appellant to add diatomaceous earth shown to be an ingredient of soaps not used in dry-cleaning operations to a soap composition not containing diatomaceous earth used in such operations. In other words, as stated in the brief of the Solicitor for the Patent Office: "It is quite evident that, except for the diatomaceous earth, appellant's dry cleaning composition is old, and even conventional, and this does not appear to be denied by the appellant. The issue presented here, therefore is merely whether, in view of the fact that it was old to add diatomaceous earth to other soaps, it required invention to add such earth to the old dry cleaning soaps recited in the rejected claims."

Appellant's brief states: "Diatomaceous earth is a finely divided material of well known absorptive properties which consists of the skeletons of unicellular marine organisms."

The description so given harmonizes with the definitions recited by standard lexicographers. It is noted that the absorptive qualities of the earth are stated to be well known, which implies, of course, that appellant was familiar with such qualities, and with the use of the earth in prior art to reduce pasty soap to powdered form.

So, it would not seem that appellant can be accredited with any broad discovery in that regard.

In his brief the point which he stresses is the claim that he discovered that by adding the diatomaceous earth "the plastic soap could be reduced to a powder form without destroying its solubility or dispersibility in dry cleaning solvents."

It is alleged that paste soap cannot be added to dry cleaning solvent in the dry cleaning apparatus without being predissolved in naphtha; that the paste soap requires considerable agitation in order to bring it into solution; that "a dry soap could have been produced by removing, or simply by not adding, the dispersing oil," but that this "would have left a non-soluble soap"; that "It was necessary to find a soap which would be solid and would dissolve in naphtha" and that "The remarkable thing about applicant's discovery is that the diatomaceous earth absorbs the oil and the soap and yet permits effective dispersion of the soap in the dry cleaning solvents."

Assuming the allegations so made to be correct, we nevertheless are unable to agree that appellant made any patentable invention or discovery.

We agree with the following statement in the brief of the Solicitor for the Patent Office:

"The earth used by Hawliczek necessarily absorbs the soap composition and yet retains it in such a way that it is an effective cleanser, which is the alleged action of the earth in appellant's composition. Naturally, since dry cleaning soaps are used in a manner differing somewhat from that in which ordinary soaps are used, the improvement due to the addition of the earth manifests itself in a somewhat different form, but it does not follow from this that invention was involved. If the idea of adding the earth to produce improvement was an obvious one, the fact that the improvement may have exceeded expectations does not render it patentable. (Naamlooze Venootschafs et al. v. Coe, [76 U.S.App.D.C. 313], 132 F.2d 573; Orr v. Skilsaw, Inc., 7 Cir., 124 F.2d 751; In re Kepler, 132 F.2d 130, 30 C.C.P.A. ——.) As was said by this Court in the case last cited: "A patent should not be granted

for appellant's discovery of a result that would flow naturally from the teachings of the prior art."

It may be said that we do not understand appellant to contend that there is anything critical in the proportions of the respective materials defined in the appealed claims. The ratios differ widely and whatever may be appellant's position respecting the matter of criticalness, we feel assured that nothing is taught which would justify a holding that they are critical.

What has been said applies to claim 21 as well as to all the other claims, and it is unnecessary to consider the ground of breadth upon which it was additionally rejected.

For the reasons stated, the decision of the Board is affirmed.

Affirmed.